## HICKS et al. v. UNITED STATES.
### No. PCA 398.

United States District Court,
N. D. Florida, Pensacola Division.
July 3, 1951.

E. Dixie Beggs, Pensacola, Fla., Yonge, Beggs & Lane, Pensacola, Fla., for plaintiff.

George Earl Hoffman, U. S. Atty., Pensacola, Fla., Hayford O. Enwall, Asst. Acting U. S. Atty., Gainesville, Fla., for defendant.

DE VANE, Chief Judge.

Joseph W. Hicks, a citizen and resident of Okaloosa County, Florida, and Hartford Accident and Indemnity Company, a corporation, brings this action against the United States of America to recover damages for injuries received by Hicks, under provisions of the Federal Tort Claims Act, 28 U.S.C.A. § 2671, et seq. Jurisdiction of this case is conferred on this court by 28 U.S.C.A. § 1346.

Plaintiff Hicks alleges that on or about October 24, 1949, acting in the course of his employment by the M. R. & R. Truck-

ing Company, Inc., he was engaged in loading a truck for his employer at the Commercial Operation Building on the military reservation of Eglin Field, Florida. Plaintiff further alleges that one Sgt. Pollock, acting in the scope of his office and employment and in the line of duty, was in charge of the loading of said truck and because of the negligence of said Pollock a heavy piece of cargo, which was being loaded onto said truck, fell upon plaintiff Hicks, by reason of which he was severely injured, which injury constitutes the basis of this suit. Hartford Accident and Indemnity Company, as a party, plaintiff, seeks to recover $2,680.80—insurance compensation—paid to Hicks because of said injuries.

Defendant, as defenses, denies any negligence of its agents or employees and pleads contributory negligence on the part of plaintiff Hicks. The facts in the case are briefly summarized below.

Plaintiff Hicks was employed by the M. R. & R. Trucking Company, Inc., as a truck driver. The company was a licensed carrier, subject to rules and regulations of the Interstate Commerce Commission and inter alia engaged in the hauling of cargo to and from Eglin Air Force Base. During the afternoon of October 24, 1949 three Company truck trailers were driven to the Base for cargo—one driven by plaintiff Hicks, one by Herbert A. Thornton and one by Otis Washington. The truck driven by Hicks was loaded with cargo for Warren Robbins Air Force Base near Macon, Georgia. By 4:30 P.M., of that day the truck had been completely loaded by Air Force Personnel, except for a 1341 pound crated Aircraft stabilizer, which was to be included in the shipment to the Georgia Base.

The testimony in the case is to the effect that when the loading of the cargo on the truck began the Air Force personnel did not know that this particular piece of cargo was to be included, but that about 4:00 P.M., Mr. John F. Knight, a civilian employee, clerk in charge of outbound freight, received this particular cargo for the Warren Robbins Air Force Base. Upon inquiry he ascertained it could be loaded onto the truck in charge of Hicks and directed that it be included thereon.

Instructions had been given and were being strictly followed that civilian personnel could not work beyond 4:30 P.M. The manual labor of the loading operations of the truck, except for this particular item of cargo, had been done by civilian personnel, but the weight of the stabilizer required the use of a fork-lift, a power driven vehicle, to place it in position upon the truck. The use of the fork-lift had not been required for the loading of any other merchandize on the truck and it was, therefore, necessary for the officer in charge of the loading to order that the fork-lift be made available for the loading of this particular cargo onto the truck. Staff Sgt. John M. Pollock, a fork-lift operator of several months' experience at the Base, received the order and moved the fork-lift to the place where the stabilizer was to be loaded onto the truck. It was 4:30 P.M., when he arrived there and all the government civilian employees quit work before the stabilizer could be loaded onto the truck. This left only Sgt. Pollock, and he, too, wanted to quit work, but plaintiff Hicks was anxious to get this one piece of cargo on his truck and get the whole cargo on its way to the Warren Robbins Air Force Base. Hicks and Thornton volunteered to help Pollock load the stabilizer on the truck. Plaintiff agreed to take Pollock home after the loading was completed as Pollock would miss his ride if he stayed beyond 4:30 P.M. The 4:30 P.M. quitting hour only applied to civilian personnel and was not applicable to Pollock, however, the government furnished no military personnel to assist Pollock in the loading of the stabilizer onto the truck. Pollock successfully placed the stabilizer in position onto the truck, except that it was eight to ten inches short of being flush with the cargo in front of it. In order to push it up flush with the cargo Pollock moved the fork-lift to the rear of the truck to push the stabilizer forward.

Up to this point there is no conflict in the testimony but as to what happened thereafter the testimony is in conflict.

984

Hicks testified that he and Thornton stood beside the stabilizer, with their hand pressed against it, for the purpose of keeping it in position when Pollock pushed it forward. It was impossible for Hicks to see Pollock's operation of the fork-lift, after he placed it in position at the rear of the stabilizer for the purpose of pushing it forward.

Hicks testified that just before the stabilizer fell off the truck onto him he had removed his hands from the stabilizer, had turned around and started to the front of the truck to get a crowbar to assist him in holding the stabilizer in position when Pollock pushed it forward and just after he turned around and had his back to the stabilizer it fell off the truck onto him and crushed his feet and legs severely.

Thornton testified that Pollock placed his fork-lift at the rear of the stabilizer, which extended thirty inches beyond the rear of the truck, inserted one prong of the fork-lift under the stabilizer and when attempting to raise it for the purpose of moving it forward, the stabilizer fell off the truck and onto Hicks.

Pollock testified he had not placed any prong under the stabilizer and had stopped the fork-lift at least two feet from the stabilizer, when the stabilizer fell off the truck onto Hicks. Pollock was unable to account in any way for the stabilizer falling off the truck.

As stated above, the M. R. & R. Trucking Company, Inc., is a common carrier, by trucks, and subject to the rules and regulations of the Interstate Commerce Commission. Rule 21, National Motor Freight Classification #10, ICC, 19, provides that when an article in a single container weighs 500 pounds or more, or should the greatest dimension exceed eight feet, and should the intermediate dimensions exceed four feet, loading should be performed by the shipper. The Rule further provides that, if requested, the carrier will undertake, in behalf of the shipper to employ additional help. No charge may be made for the labor performed by the truck driver, but a charge of $1.50 per hour may be made for each man furnished other than a truck driver.

It is clear from this Rule and other Rules of the Interstate Commerce Commission that the duty of loading the stabilizer onto the truck rested upon the defendant. The testimony in this case shows that the military personnel, in charge of loading trucks at the Air Base, had notified Hicks, on previous occasions, that, under the Interstate Commerce Commission Rules he was under no obligations to assist in the loading, but the witnesses in this case testified that Hicks always assisted in loading the trucks driven by him and was very meticulous in seeing that every truck was properly loaded before moving it from the Base. The Army personnel never prevented him from doing this, but there is no testimony in the record that at any other time was there insufficient Army personnel to properly load the cargo onto the truck. Thornton also volunteered his assistance on this occasion because of the absence of any Army personnel and assisted Pollock in placing this item of cargo on to the truck. Neither Hicks nor Thornton expected, demanded or received any compensation for their labors in that connection.

■ The first question presented by the pleadings and evidence in this case is whether Hicks assumed the risk and, therefore, may not recover for the injuries sustained by him. There is no Florida decision directly on this point. The nearest case is Hartquist v. Tamiami Trails Tours, Inc., 139 Fla. 328, 190 So. 533. In this case the Supreme Court of Florida held that a count in a declaration stating facts, in many respects similar to those in this case, stated a cause of action against the defendant. It held the count in the declaration good and reversed a decision of the lower court that sustained a demurrer to the declaration on the Fellow Servant Doctrine that the plaintiff assumed the risk. The Florida Supreme Court, in this case, cites, with approval, numerous decisions of other courts to the effect that where the servants of the consignee of merchandize assists the servants of the carriers in un-

loading merchandize, where assistance is necessary, he does not do so at his own risk, and if injured by the negligence of a servant of the carrier, the carrier is liable. 56 C.J.S., Master and Servant, § 328, p. 1091 states the law on this point as follows: "One who, in furtherance of his own interests, assists the servants of another in the performance of their work is not a trespasser, because he is lawfully in his place; he is not a fellow servant with the other servants, because he is not directly or indirectly retained or employed by the master of such servants; he is not a mere volunteer, because he does the work to further his own interests or those of his master. Therefore the master of such other servants is liable to him for injuries received as a result of their neglect or misconduct, and the fellow-servant rule is not applicable. This is true, even though the service is not wholly voluntary, but is induced by the request of a servant in the master's employ."

The court holds that Hicks did not assume the risk in this case and that if his injuries were the direct result of the negligence of the agent or employee of the defendant and Hicks was in no way guilty of contributory negligence, he is entitled to recover in this case.

The second question posed is whether the evidence clearly shows that Pollock was negligent. As stated above, the testimony on this question is in direct conflict. Hicks testified he had no knowledge as to what caused the stabilizer to fall from the truck, but truck driver Thornton testified that Pollock's effort to lift the rear end of the stabilizer, to push it forward, caused the stabilizer to fall from the truck. He testified that tilting occurred because the fork-lift was at an angle with the stabilizer and when the fork-lift was placed under it and Pollock attempted to raise the stabilizer it caused the same to turn over and fall off the truck. Pollock vigorously denied he was ever in contact with the stabilizer after he moved the fork-lift to the rear of the truck. The court, is, therefore, compelled to make its deductions as to the truth of the testimony of these witnesses from other related testimony in the case.

The evidence shows that the stabilizer weighed more than 1300 pounds; that the fork-lift raised it and placed it onto the truck from the side of the truck. Two 2″ x 4″ pieces of wood were placed under the stabilizer when it was lowered onto the truck so that the prongs of the fork-lift could be safely removed from under the stabilizer. The body of the truck was four feet from the ground and the box in which the stabilizer was crated was six or eight feet tall and about ten feet long. The crate, with the stabilizer, sat safely and steadily on the body of the truck while the fork-lift moved from side to the rear of the truck. It was necessary to lift the rear-end of the stabilizer to remove the two 2″ x 4″ pieces of wood before the stabilizer could be pushed into its final position.

Counsel for the defendant argues that Hicks and Thornton held the stabilizer steady on the truck while Pollock moved the fork-lift from the side to the rear of the truck. When it is considered that the body of the truck was four feet off the ground and the height and weight of the stabilizer is taken into account, the court is unable to find from this evidence that Hicks and Thornton substantially contributed to steadying the stabilizer while Pollock moved from the side to the rear of the truck.

The court is satisfied from the evidence in the case that the fork-lift, operated by Pollock, was the only force present capable of causing the accident and since the accident did occur that it was the result of the negligence of Pollock in attempting to raise the stabilizer to push it forward. The witnesses are all in agreement that if the position of the fork-lift was at an angle with and not directly in the rear of the stabilizer when Pollock attempted to lift the stabilizer it would cause it to tilt and fall off the truck. There is no testimony to the effect that had the fork-lift been directly behind the stabilizer the same results would have likely followed. When the court takes into consideration the

weight of the stabilizer, the time it had remained on the truck, after being placed there, the necessity of raising the rear of the stabilizer to remove the two 2″ x 4″ pieces of wood placed there before it could be pushed in position on the body of the truck, and other related evidence surrounding the accident the court is of the very definite opinion that this accident was the result of the negligence of Sgt. Pollock.

Defendant contends that assuming Pollock was negligent plaintiff was guilty of contributory negligence, which defeats his right to recovery. This contention is based on two grounds. Counsel for defendant first contends that the hazard involved was so clear that Hicks was guilty of contributory negligence when he failed to remove himself out of danger when Pollock raised the rear of the stabilizer to push it forward. There is no testimony supporting this contention. Moreover, it was necessary for some one to remove the two 2″ x 4″ pieces of timber when the stabilizer was raised. The court finds and holds that this point is not well taken.

The second contention advanced by counsel for defendant is that Hicks, being a 70% disabled World War II veteran, suffered with such disabilities that he was, because of this fact, unable to move rapidly when he was confronted with this danger and since he had full knowledge of his disabilities he contributed to this accident by failing to keep himself out of danger. This contention is based entirely on theoretical deductions and arguments. There is nothing in the evidence to indicate that Hick's disabilities would have prevented him from moving out of danger as rapidly as did Thornton. The difference in the two cases was that Thornton saw the crate when it started to fall and got out of the way while Hicks had his back turned and did not know it was falling until it was on top of him. Moreover, Hicks had passed all the required examinations of the Interstate Commerce Commission as to his physical ability to drive a truck on the highways of the United States. If he suffered with the disability advanced by counsel for defendant he should not be a licensed truck driver for the operation of trucks engaged in Interstate Commerce.

From all the evidence in the case the court finds and holds that Hicks was not guilty of any contributory negligence in this case.

### Damages.

Plaintiff suffered substantial injuries from the accident. He had already been awarded 70% disability as a result of an injury received in World War II. The permanent injury received in this accident results from a broken ankle, which is now stiff, and, fortunately for him, this injury is in the same leg in which he was wounded during World War II.

Plaintiff suffered other injuries, none of which were permanent, but all of which required a long period of hospitalization and an extended period in casts and braces. He also endured substantial pain and suffering as a result of the injuries. The injury to his ankle disqualifies him to further hold his position as a truck driver for a licensed motor carrier. However, he is employed by a firm of substantial proportions and as soon as he was able to return to work was given a position with the company, in its office, at the same salary he was earning as a truck driver. Whether Hick's future earning capacity has been diminished as a result of the accident is purely speculative. His demeanor on the stand showed him to have a splendid personality and almost boundless energy. It may be he will go farther, from a financial standpoint, working in the office of the company, than he could have gotten as a truck driver.

He was first hospitalized at the Air Base Hospital at Eglin Field and $2,680.80 paid by the Insurance Company, covered the remainder of his hospital expenses and other expenses incurred in connection with the injury.

■ Upon the entire evidence, the court is of the opinion that a judgment in the sum of $12,680.80 will fully compensate plaintiff for the injuries sustained by him. Of this amount the Insurance Company will be awarded a Judgment of $2,680.80, the amount expended by it in Hick's behalf,

and Hicks will be awarded Judgment in the sum of $10,000.

 This has been an actively contested case and counsel for plaintiff is entitled to 20% of the $10,000 awarded to Hicks for attorney's fees in this case.

A judgment will be entered accordingly.